## N. Y. SUPERIOR COURT.

WILLIAM H. SHEARMAN, plaintiff and respondent, agt. THE NIAGARA FIRE INSURANCE COMPANY, defendants and appellants.

Although the operation of a fire insurance policy may be suspended by the sale or transfer, without the consent of the company, required by a clause in the policy, of the property insured, yet, if a union of the ownership of the property and the interest in the policy in the assignee subsequently occur, and the company assent thereto, the policy again becomes effectual and reattaches to the property.

Such assent amounts to a new agreement on the part of the company to become directly answerable upon the policy to the assignee.

Where a policy contained a clause which, literally construed, required the written consent of the company not only to the assignment of the policy but also to the transfer of the *property*, and but one printed form to be filled up and signed by the assignor, in case of an assignment, and but one printed form to be filled up and signed by an officer of the company for the purpose of demonstrating the company's assent to the assignment, it was held that an assignment of the policy, and the indorsement on it of the company's consent thereto, to the assignee of the property, in accordance with such printed forms, which the company led the assignee to believe was sufficient, must, after the occurrence of a loss, be held sufficient to bind the company.

*General Term, May,* 1870.

*Before* BARBOUR, *Ch. J.;* FREEDMAN *and* SPENCER, *JJ.*

APPEAL from judgment.

The action is on a policy of insurance.

On March 21, 1866, the defendants, with three other companies, issued a policy whereby each of the companies named therein, acting and contracting for itself, and in consideration of one fourth of the sum of fifty-two 50-100 dollars to each of them paid, insured L. J. Shearman against loss or damage by fire to the amount of one fourth part of three thousand dollars, for the term of twelve months from the date of the policy, upon his dwelling and

shrubbery and fencing around it, situate on Castle street, Wilmington, N. C.

The policy contained the following clause, among others :

"If the property be sold or transferred, or any change take place in title or possession, whether by legal process or judical decree, or voluntary transfer or conveyance, or if this policy shall be assigned without the consent of the companies indorsed thereon, * * * * * or if the interest of the assured in the property, whether as owner, trustee, consignee, factor, mortgagee, lessee, or otherwise, is not truly stated in this policy, * * * then, and in every such case, this policy shall be void."

On November 22, 1866, the insurance was increased to $3,500.

On March 21, 1867, the policy was renewed for one year.

On March 4, 1867, L. J. Shearman conveyed the property insured to William H. Shearman, the plaintiff, reserving, however, the right to rent the same for three years or to redeem the same. The companies' agent, were notified of the sale, and on April 15, 1867, L. J. Shearman filled up the blank printed by the companies on the policy for a transfer of the said policy, and executed the transfer, as follows :

"For value received, I hereby assign, transfer, and set over to William H. Shearman, all the right, title, and interest in and to the within policy, and all benefit and advantage to be derived therefrom.

"Dated at Wilmington, N. C., the 15th day of April, 1867.                         "LEWIS J. SHEARMAN."

The companies consented to the transfer, as follows :

"The insurance companies within named hereby consent that the interest of L. J. Shearman in the within policy be assigned to William H. Shearman, subject to all the terms and conditions therein mentioned and set forth.

Shearman agt. Niagara Fire Ins. Co.

"Dated at Wilmington, N. C., the 15th day of April, 1867.                                    "DE ROSSETT & CO., agents."

The property was totally destroyed by fire in the night of June 4, 1867.

The defendants refused to pay the insurance on the ground that they had been released from liability by reason of a violation of that clause of the policy which is above set forth.

Upon the trial the court held that they were liable, and refused to submit any other question to the jury except the question of the value of the property destroyed.

The jury found that the loss equaled the insurance, and rendered the verdict accordingly.

Judgment was entered upon the verdict, and the defendants appealed.

JOHN E. PARSONS, *counsel for plaintiff and respondent.*
G. W. COTTERILL, *counsel for defendants and appellants.*

*By the court,* FREEDMAN, J.—It is now firmly settled that no transfer of interest will work a forfeiture under the clause contained in a policy, forbidding a transfer of the interest of the assured in the policy, *or in the property* insured thereby, without the written consent of the company, which does not so entirely deprive the assignor of all insurable interest as to prevent his recovering on the policy for his own benefit, if that clause was not contained in it. To take away the cause of action in one case, and to render void the policy in the other, equally requires a transfer or *termination* of the entire insurable interest. So long as the insured retains such an interest that he may be a sufferer by the loss, the policy remains valid to protect that interest. (*Hitchcock agt. Northwestern Ins. Co.,* 26 *N. Y.,* 68; *Van Deusen agt. Charter Oak Fire and Marine Ins. Co.,* 1 *Robt.,* 55; *Fernandez agt. The Great Western Ins. Co.,* 3 *Robt.,* 458; *Phelps agt. Gebhard Fire Ins. Co.,* 9 *Bosw.,* 405.)

And, in case of an actual transfer of the entire insurable interest, the following additional propositions, arising under the same clause, have been established as the law of this state.

After a sale of the property insured, and previous to the assignment of the policy to the purchaser, the effect of the policy as an indemnity becomes suspended, not from any vice in the policy, but from the absence of a subject for it to act upon.

If a fire occurs during this time no recovery can be had against the underwriters, not because the policy had become void, but because, at the time of the fire, the insured had no goods covered by the policy, and the purchaser had no policy to cover his interest in the goods.

But the moment the interests become again united by the union of the ownership of the goods and the interest in the policy in the same person, the policy again becomes effectual and reattaches to the goods.

And when the assignment of the policy, with the consent of the insurers, is absolute to one who has become the entire owner of the subject of insurance, it becomes a new contract of insurance between the underwriters and the assignee. If the assignment, taken in connection with the policy, plainly transfers the assured's whole interest, the underwriters' consent to it is evidently equivalent to their agreement to become directly answerable to the assignee. In such case the proceedings to enforce payment may be in the assignee's name, and he becomes, to all intents and purposes, the substituted party to the contract. (*Hooper* agt *The Hudson River Fire Ins. Co.*, 17 *N. Y.*, 424; *Wolfe* agt. *The Security Fire Ins. Co.*, 39 *N. Y.*, 51.)

It is true that in the last-named two cases the property insured consisted of a stock of goods kept for sale; and for that reason it may be claimed that the propositions therein laid down should be confined to that particular class of cases, on the ground that it must be considered as the

intention of the parties to the policy that the assured may sell and replace his entire stock as often as his own interests may require, and that the policy is to protect whatever goods he may chance to have on hand at the time of the fire. But I can perceive of no good reason why the same propositions should not be applied in the decision of the case at bar. The cases cited by defendants on the argument afford no reason to the contrary. In *Smith* agt. *The Saratoga Mutual Fire Ins. Co.* (3 *Hill*, 508), and *Neely* agt. *The Onondaga County Mutual Ins. Co.* (7 *Hill*, 49), the assured, previous to the fire, had done an act which, according to the peculiar conditions of the policy, being that of a company organized on the mutual plan, put an end to the policy, and, as the consent of the company had not been obtained thereto in any manner, the court held that an assessment by the company for losses did not establish a waiver without further proof that the losses happened after the forfeitute of the policy had accrued. And in *Howard* agt. *The Albany Ins. Co.* (3 *Denio*, 303), in which case the policy, covering a brewery and the stock and utensils therein, had been renewed several times, the same learned judge who had delivered the opinion of the court in *Smith* agt. *The Saratoga Mutual Fire Ins. Co.* (*supra*), expressly held " that when the assured owns the property at the time the insurance is effected, a subsequent transfer of his interest cannot render the policy void. The contract will be of no value to the assured, for the reason that there is no longer anything upon which it can operate ; but the subsequent transfer cannot infuse any vice into that which was originally a valid agreement."

These remarks dispose of the claim set up by the defendants that, because L. J. Shearman conveyed the property to his brother, the policy became a mere wager policy, and that consequently the renewal of it notwithstanding the acceptance of the payment of the premium, was null and void. The subseqent consent of the defendants, indorsed upon the

policy, that the interest of L. J. Shearman in the said policy, not merely in the renewal receipt, but in the policy, be assigned to the plaintiff, subject to all the terms and conditions mentioned and set forth in the policy, revived the policy in favor of the plaintiff and re-attached it to the property described therein, just as effectually as if a new policy had been issued to the plaintiff therefor. In *Wolfe* agt. *The Security Fire Ins. Co.* (39 *N. Y.*, 49), the property had been transferred from John Engleheart to one Stupp, who afterwards transferred the same to Margaretta, wife of John Englehart. The company never consented to the transfer to Stupp, but some months afterwards consented to the transfer of the interest of John Engleheart in the policy to his wife Margaretta, and upon that consent the company was held liable.

The defendants also claim that, inasmuch as their policy provided that if the property should be sold or transferred * * * or if the policy should be assigned without the consent of the company, to be indorsed thereon, the same should be void, it was necessary for plaintiff to show not only defendants' consent to the assignment of the policy, but also their consent to the transfer of the property covered by it, and that they cannot be held liable in the absence of evidence that, in point of fact, they did consent in writing to the transfer of the property. It requires but little argument to demonstrate the hollowness of this claim. The assignment of the policy, in order to be of any benefit to the plaintiff as assignee had to be accompanied with a transfer to him of the interest of the assignor in the subject of insurance. Such being the case, the request made to the defendants, to consent to an assignment to plaintiff, was of itself notice to them that plaintiff had acquired, or was about to acquire, an interest in the insured property. Besides that they had actual notice of the fact that the said property had been conveyed to plaintiff. Their policy contained but one printed blank to be executed by the assignor to the assignee in case of an

Shearman agt. Niagara Fire Ins. Co.

assignment, and but one blank to be filled up and to be executed by the company for the purpose of demonstrating the company's assent to the assignment. What then was the intention of the defendants, and what was the legal effect of the return of the policy, after full knowledge of all the facts, with the company's consent indorsed thereon, that the interest of L. J. Shearman in the said policy be assigned to William H. Shearman, subject to all the terms and conditions therein mentioned? In the language of HUNT, J., in *Solms* agt. *The Rutgers Fire Ins. Co.* (5 *Abb.*, *N. S.*, 211), the intent could honestly be no other than to insure anew the property described for the plaintiff. If the defendants can be supposed to. have reasoned with them-selves that "there is a defect in the consent as to the prop-erty, but we will say nothing about it, we will keep the unearned premium and avoid a liability if a loss should occur," the well-settled principles of law and morality would compel the indemnity to the party claiming. The defendants must be held to the contract, as they allowed the other party to understand it and to suppose that they understood it. The act of the defendants was either a trick unworthy of a respectable company, or it was a state-ment to the plaintiff that he might regard his policy as valid to all intents and purposes, and that if any loss occurred they would pay it to him in the same manner as they would be bound to do if the policy had been issued directly to him. At any rate they allowed and induced plaintiff to understand that the transfer of the property was entirely satisfactory to them, and they caused him to rely upon the policy as binding. If they meant to withhold their consent to the transfer of the property, although they were willing to consent and did consent to the assignment of the policy, thay should have said so, so that the plaintiff could have effected other insurance. Not having done so, they cannot be premitted to escape liability on the ground that their con-sent was only a partial one, but the renewal of the policy

must be construed as having taken place at the time of the transfer of the policy to the plaintiff, and of the execution of defendants' consent.

The only remaining point urged by the defendant is that there was a change of possession of the property, contrary to the terms of the policy, which provided that if any change should take place in title OR POSSESSION, whether by legal process or judicial decree, or voluntary transfer or conveyance, without the consent of the company indorsed thereon, the policy should be void. The evidence shows that after the conveyance of the property to the plaintiff, and up to the time of the fire, L. J. Shearman remained in possession as tenant of the plaintiff, and that Mr. McGreal, the city marshal, lived with him; that shortly before the fire, L. J. Shearman took his wife and children to Brattleboro', Vermont, for their health; that before leaving Wilmington, N. C., said Shearman requested one Mr. Brown to occupy part of the house and take care of it, together with Mr. McGreal, until his (the said Shearman's) return, that Brown complied with such request, and that at the time of the fire L. J. Shearman was on board of a steamer off Hatteras on his way back to Wilmington. It also appears that the defendants were notified, by way of precaution, of the intention of L. J. Sherman to come North on a short visit, and to leave Brown in charge of the house. These facts fall far short from establishing a forfeiture of the policy. Shearman's brief temporary absence did not constitute a change of possession in any sense which the policy could attach to that expression. Brown was a mere servant or employe, taking care of the property for Shearman, and his possession was, in judgment of law, the possession of his employer.

The judgment should be affirmed, with costs.

BARBOUR, C. J., and SPENCER, J., concurred.